The first case is Howe v. Litwack et al. It's numbers 13-3380, 3448, and 3449. And we have Mr. Kang, Mr. Cambria, and Mr. Pelosi. Good morning, Your Honors. May it please the Court. My name is Edward Kang, and I represent the appellant Lauri Howe. I would like to reserve five minutes for rebuttal. Sure. I'm going to discuss one of the three issues we raised on appeal, that Howe's injury was caused by the appellant's work misconduct. Before we get there, let me address the jurisdictional issue. Could you address the worker failment issue? Yes, that was the issue that was maintained. Okay. The district court erred by holding that the injury was caused by the state court's order appointing the receiver and dismissing the complaint under the worker failment doctrine. The worker failment doctrine, as the Supreme Court's 2005 opinion in ExxonMobil said, is a rule of a very narrow jurisdictional question. The rule says, under worker failment doctrine, it is a very narrow jurisdictional rule that limits district court's exercise of subject matter jurisdiction, and it applies only in cases brought by state court losers complaining of injuries caused by state court judgment, and that a judgment is rendered before the district court proceeding started and inviting the district court to review and reject those judgments. And this court in 2010, in the Great Rest in Case, this court broke down the holdings of the ExxonMobil case related to the worker failment doctrine into four elements. Number one, the federal plaintiff lost in the state court. We're familiar with those. Why don't you address that one? You're saying you didn't lose in the state court? That is correct, Your Honor. Because you got a divorce? Not you, but your client. Yes. My client got the divorce. It was a divorce proceeding that she started back in 2008. Isn't the relevant question, though, whether she won or failed to win on her several attempts to get Mr. Lutwak thrown out as a receiver or not paid or challenged his actions, virtually all of which challenges were found by the court to be meriless? Your Honor, the purpose of the divorce proceeding that my client filed was to get a divorce, and there were two main issues that related to it, and that goes to the custody issue and equitable distribution. And I understand that the receiver was appointed and there were challenges were made. Right. It was vigorously litigated, right? Yes, it was. It was objected to. Yeah. And litigated repeatedly before the state court judge, and your client lost those several challenges with potentially one exception. But otherwise, it was across the board, slam dunk, your client lost all those challenges. Since your client lost all those challenges, ultimately did not appeal the order which necessarily upheld the receiver's actions. Why isn't that game over for you folks? That is not true, Your Honor, and the reason is receivers' actions were objected to. Those were not litigated, and the reason that it was not litigated was because the receiver was not a party. You had hearings in which you objected to actions that the receiver took or you didn't want him paid. You opposed his being appointed in the first place, correct? Yes, my client objected to at the same time, and it was labeled as hearings, but they were oral arguments. No testimony was ever taken. But you had counsel appearing before the court. I'm sorry, Your Honor? You had counsel appearing before the court. Yes, Your Honor. And did anybody say, wait a second, Your Honor, you can't make this decision. We have facts and evidence you're not considering. I mean, where is there in the record any assertion by your client the state court proceedings didn't give her a full and fair opportunity to litigate what she wanted to litigate in connection with Mr. LeBlanc's appointment and his actions? Your Honor, in order to have a full and fair opportunity, my client would have been entitled to examine the receiver and ask him questions. And what I'm asking you is, is there any record that your client said, I'm not getting to put on evidence I want to put on. I'm challenging what you're doing here, Judge, because it's wrong and I'm going to take it. I mean, this is ultimately it's not appealed what the state judge does, right? Your Honor, there was earlier in the portion in the proceeding where my client has asked for a plenary hearing, which at that one point the court granted the request, but it was never given. Even the time when the receiver was asking for an order discharging him and also asking for a court's order approving and accepting all of the actions they took as a receiver, which the court denied by not granting it, even at that time, both my client and a non-party at the house, they objected to and asked for a plenary hearing. Did your client not submit copious amounts of documents in association with the challenge to Mr. Litwack's appointment? There was evidence submitted, right? Yes. My client submitted paper objections challenging his conduct after the appointment. And if you're asking, going back to your Honor's question, whether my client was a winner, yes. Wait a minute, is New Jersey – I'm from Delaware. Delaware is a no-fault state for divorce. What is New Jersey? Is it a no-fault state? It is also a no-fault state, your Honor. So, winning is automatic, right? In fact, what you're saying, there was no contest with regard to whether she could get a divorce. Well, if you get a divorce, you are winning. And since considering that she was a plaintiff – Obviously, in the real world sense, you're getting separated from someone you want to be with. But it's a no-fault state. There's no contest. That is correct. You will get your divorce. You will get your divorce, but that does not take away that she was a winner. She was a winner. And going back to the question about the discharge and whether my client won against the receiver – You're a winner usually when there's something contested, isn't there? One main issue that was contested, and your Honor, you're right. One main issue that was contested was my client's challenge to remove the receiver, which the defendant in the underlying case – and your Honor, there were only two parties, Al and the former husband named Apermolo. There were only two parties. Whenever the issue of removing the receiver or discharging the receiver came up, the husband, Mr. Apermolo, he challenged that vigorously. He wanted the receiver intact. After several attempts, the receiver was finally removed effective January 15, 2011. That receiver was in what, 21 months or so? About 18 months, your Honor. About 18 months. And the receiver was finally removed over the husband's objection. And the receiver – when the receiver was first put in place, it was the intent of the family court to have the receiver in place until the pendency of litigation. And based on my client's urging, the receiver was finally removed. But the things you're complaining about now are things which are things she complained about before. And those are things which were litigated, aired, and a statement was made by the state court judge on more than one occasion saying, No, he hasn't exceeded his authority. He's doing what he's supposed to do. I'm satisfied that what he's doing is consonant with the requirements of my order appointing him. It's good. I mean, I'm not sure how that's a win for your client. If your client objects and is told, No, your assertions are rejected, you're wrong, even if ultimately the receiver is removed or his services are found unnecessary sooner than the end of the case, how is that a win for your client? Because if my client had not won, the receiver would have been in that place until the divorce decree was entered. That wasn't the case. The divorce decree was entered about 14 months after the receiver was removed. Could your client have appealed the failure to hold a hearing, the failure to remove the approval of the receiver's report? Was there an opportunity in state court to appeal those matters? No, Your Honor, not in this case. And the reason being is that that was an interlocutory order. But you could have made those objections at the end of the case, right? You had an opportunity to take an appeal at some point, and you didn't. And why isn't that just like any other interlocutory appeal? I mean, any other issue that's interlocutory, you wait until the end, and if you've got a complaint about it, you take it up. You could have done it here, right? Your Honor, I can answer it in two parts. And one being is that my client couldn't take their appeal on the receivership issue because the divorce decree was entered based on consent. And you could have it in the end. The divorce decree was entered based on the consent of the parties at the end. So you couldn't consent to the final decision or the final judgment in the divorce case was the consent order allowing them to get divorced. Are you saying that as a matter of New Jersey law, your client could not have said, Your Honor, I'm preserving my right to object to the receiver? And that's exactly what my client did. My client reserved her right to go, her right to file claims against the receiver when she... I mean, appeal, associate... Maybe I should ask it this way. The people representing Mr. Litwack say in page 14 of their answering brief, quote, Claims against receiver have to be made in the receivership proceeding and are barred if they are not. That's their assertion of what New Jersey law says. They cite the JLD equities case. Is that a correct or an incorrect statement? It is a correct statement. It is a correct statement. If you are suing the receiver in sufficient capacity as a receiver and that JLD equities case, that case related to receivers' conduct being negligent and the creditor filing a claim for the receiver not taking care of the creditor's interest properly, something like that, filing a claim against the receiver, or actually it's filing a claim against the receivership has to be done while the receivership is intact. In that case, the receivership dissolved and there was no more assets to file a claim against because when you are claiming against the receivership, you're not suing or you're not claiming against the receiver himself, but you're doing it against the assets of the receivership. In this case, we are not or my client is not claiming against the receiver or receivership, I'm sorry, against the receivership or his funds because the receivership's funds actually belong to my client. My client is asserting a claim against the receiver in his individual capacity, not in his official capacity as a receiver. Let me just ask you a couple of questions. Can you file an individual claim against a receiver for duties performed in his official capacity? Yes, Your Honor. If the receiver stepped out of bounds of his jurisdiction, and there's a case on point about that, if the receiver commits independent tort that is separate and apart from his duty as carrying out his official duty as a receiver, which actually took place in this case, all your arguments that I could understand in the state court were characterized as he stepped outside, but they were all things that he was doing ostensibly in the course of his work as a receiver, which the state court accepted were in fact in the course of this receivership's official duties, with the exception of the marketing expert setting that piece aside. Are you suggesting that depending on the label you put on it, you get to bring a separate action? If you say, oh, he's outside the scope. Now we don't have to do it inside the receivership. We get to bring a separate tort action, even though we've litigated the issue or argued the issue and put evidence in on the issue in the course of the divorce proceedings. Your Honor, in the context of jurisdictional question under the Rupert Feldman Doctrine, when the receiver took some matters into one's hands, such as preferring the assets of the company and such as firing the client during their first meeting and also raiding the property and taking her personal belongings, much of these things, those things were never authorized by the court. Those things were maybe either ignored or ratified by the court afterwards. There you go. That's kind of the challenge, right? I mean, that's the spin that you put on it. That's how your client sees it. I'm not saying she's not entitled to a view of it, but that view was put in front of a state court judge who heard that view of it, heard the other side's view of it, and disagreed with your view of it, said your client's wrong. That view of it is wrong. This was within the bounds of the receiver's responsibility. You're wrong. You lose on that challenge. If that is what happened and that's what the record reflects, tell me if I'm wrong, but that's how I understand the record. She made those challenges. She lost those challenges. Even if the label Rooker-Feldman isn't put on it, why is it just a matter of straight-up issue preclusion, aren't you guys done, finished, over with? Well, Judge Jordan, you made a point earlier. You asked about whether all of the issues were resolved by the state court, the exception of hiring the marketing person. That's not true. When the state court judge and the family court judge ruled on some of the things, especially in the end of December of 2011, the family court judge specifically found that the receiver exceeded the scope of his duties, and he cited hiring a marketing consultant as one of the many examples. And the judge also talked about retaining law firms and also receivers. Wasn't that ruling something that the judge said, yeah, I'm taking that back, and then the only thing that was left out there was the marketing consultant? Am I correct about that? Hiring a marketing consultant was one of the things. Yeah. Leave it aside. There was a ruling, as you've described it, and I might have the record wrong, but I thought the record was that having said that, the judge later said, in effect, I'm taking that back. Those rulings are voided. Is that not what happened? No, that's not what happened. The only thing that the judge vacated was a portion relating to entering Mrs. Howe's property without permission. That was the only portion. Other aspects of the receiver interjecting himself, other aspects of a receiver exceeding the scope of his duties, those other aspects were not vacated. Only one was vacated. When we've been talking about jurisdiction, there's one other aspect of jurisdiction I'd like to ask you to perhaps address when you come back under rebuttal, and that is that the district court dismissed the state law counts because of the lack of evidence of diversity jurisdiction. Is that correct? Yes, that's correct, Your Honor. It's based on our report. Correct. If that's the case, isn't that a non-final order, which is not appealable? There's a case that we have called Newark Branch NAACP versus Town of Harrison. It's at 907F2nd. It's at 1408, and the statement is on page 1416, which says the principle is well settled in this circuit that an order dismissing a complaint without prejudice, which is what happened here, is not a final and appealable order. I think, Your Honor. You don't have to answer now. I'll let you come back in rebuttal. Okay. Thank you, Your Honor. Mr. Cambria. Good morning, Your Honors. William Cambria, Mapa-Rhodes, Virginia Carpenter, for Mr. Litwack, and for Litwack, McKernan. I'd like to address one. Let's just sort of start on the last part, at least on diversity jurisdiction. Wasn't diversity jurisdiction at least property pledged to count 7, 10, and 12 because they involve Litwack only, and also counts 9 and 11 because they involve only the law firm of Gruccio Pepper? Well, Judge, the only finding that Judge Hillman made about I'm just asking you legally here. Yes. What I'm saying is the law in pleading diversity jurisdiction dealt with Litwack and Kernan, the LLC. So if you want to parse it that way, you could say that for those counts, Litwack and Kernan was not involved, and therefore. In fact, Litwack and Kernan was only a party to eight of the 12 state counts anyway. The four of them didn't even involve it. Yes. So, I mean, doesn't it look like the court did some overstating with regard to where diversity jurisdiction was missing? Well, I understand what you're saying. If you want to parse it out count by count. But I think there's also a rule in this circuit that the elements of diversity jurisdiction have to be specifically pledged, and it's the burden of the plaintiff to show that diversity jurisdiction. Well, I mean, the only one that they didn't was with regard to the law firm, correct? Yes, that's correct. Because that's an LLC, and you have to look at where the members are, and they didn't have the information in the complaint as to where. That's correct. But that doesn't really apply to Gruccio Pepper. It really doesn't apply to Litwack directly. That's correct. Okay. I want to first go to the point, one of the points that Judge Jordan had raised in terms of the removal of the receiver that took place in January of 2011. And I can refer you to comments by the court at JA996, where he mentioned that it was always his intention to return control to the parties once the difficulties that had occurred back in August of 2009 had resolved. And Mr. Canberra, the receiver was removed because this transition had been put in place. It was not something that was done by which the judge was disapproving or disagreeing with anything that the receiver had done. Okay. Before we get into that, though, Mr. Canberra, can you talk with us about Brooker Feldman? Yes. There are four things that we've said in the Great Western Mining case have to be shown. One of them is that the complaints of injuries caused by the state court judgment. Yeah. How do you satisfy that aspect of the Brooker Feldman test in this case? What is it in the state court judgment that you think is the thing they're complaining about? Well, there were a number of orders entered by the state court. The first one was appointing Mr. Litvack as a receiver. There were numerous orders that approved of his actions or rejected the complaints of the plaintiff. Sure. But I understand Mr. King to be saying, I'm not complaining about that order isn't what hurt me. What hurt me is the behavior of the receiver. I'm not taking issue with the existence of a court order. I'm not saying that's caused me some problem or continued problem. I'm saying Mr. Litvack has caused me problems. That's the argument I understand is being made back. What's your response? The first thing I would say is that obviously everything Mr. Litvack did was in its function as a receiver because Ms. Howe and Mr. Litvack had no interconnection or interaction in any way other than that. That's precisely their argument. Their argument is he went outside that realm. That's what I'm entitled to object to. He was operating outside that official capacity. Judge, as I was preparing for this oral argument, I had occasion to go back and read some of the cases that were involved in. Something struck me from McCormick versus Braverman, which I think was a Sixth or Seventh Circuit decision, where the court said, if actions are the product of the state judgment, a challenge to those actions challenges the judgment. I think that succinctly states the fact that if Mr. Litvack's actions are the result of his appointment, the fact that he's then being challenged means that the appointment order and the orders that discharge him and approve of his actions are being challenged. If we were to look at this in terms of issue preclusion as opposed to Rooker-Feldman, do you still win? Your briefing seems to indicate you think you do. Well, I think both claim preclusion and issue preclusion, we win. I think if it's judicial immunity, we win. So even if the plaintiff were able to slide by Rooker-Feldman, he still runs into a stone wall in terms of judicial immunity and preclusion. How does judicial immunity play? Well, Mr. Litvack, as a court-appointed receiver, is entitled to judicial immunity, sharing the order, the immunity of the judge that appointed him. Would that be limited to acting within the bounds of his official duties? Well, yes, I think it would. But on the other hand, I don't think you can defeat judicial immunity simply by alleging that what you did was outside the scope of the order. How else would you do it? I mean, you'd have to prove it, but how else would you? You go to the state court judge. Both in New Alaska and T&W, the courts in those cases discussing judicial immunity said, these are issues that are more properly directed to the state court judge. That's where they should have gone. And as Judge Jordan pointed out previously, if they were unhappy with the decision of Judge Mendez, they had the opportunity at some point certainly to appeal to the appellate division. What was the final order that could have been appealed from? Well, I think the discharge order could have been appealed. It may have had to be interlocutory, but certainly when the final judgment of divorce was entered, they could have appealed at that point. But if it's a divorce by consent, can they appeal it? Oh, certainly. Are there New Jersey cases that so hold? I can't cite you one at the moment, Judge, because it's not something that I had focused on up until this moment. If you want, I can try to check it out and submit something to the court. I think that would be helpful. Well, certainly there is no way that they are denied an appeal at some point. Well, that's the question, right? And so having an answer to that would be important. Mr. Kanks seems to be telling us because this divorce was by consent, there wasn't ever going to be an opportunity to challenge on appeal the orders associated with the receiver. Now, that seems unusual to me, but maybe that's New Jersey law. If that's not New Jersey law, you need to straighten that out. How were their rights to argue about Mr. Litwack's actions preserved, given that the divorce decree was by consent? What appeal route did they have? Well, I certainly think when the discharge order was entered, they could have appealed at that point. Now, that may have been interlocutory or it may have been final, but it certainly was an opportunity for them to appeal because that was a final order with respect to Mr. Litwack's participation in the case. Any further questions? Judge, if I may, I'd like to address the sanctions issue. Go ahead. Are you doing that? Are you going to do it? Yes. Okay. We believe that Judge Feldman sort of short-circuited his consideration of the sanctions motion because he limited it to the Rooker-Feldman question. And as I think we've discussed earlier, even if Rooker-Feldman didn't file the case, this is still a frivolous lawsuit because of judicial immunity and because of the principles. She's claiming, as I understand it, that this person who was there for 18 months or so, that he did things during the course of his receivership that were outside of his charge and that are compensable. And Judge Feldman found, and it's an abuse of discretion standard, that you're allowed to make those kind of claims. You may disagree with them, but they're plausible claims, even though the court didn't buy it. Well, they're not plausible if they've already been decided by the state court and the same attorneys that argued the matter before the state court and lost then bring a federal court action. Well, you didn't win all of them, right? I mean, what do you do with the assertion that the marketing consultant was hired without authority and that was... The judge did not say that it was definitely outside his... He thought it might be, and he ordered that the marketing consultant be terminated, and he was immediately terminated. Yeah, so that looks suspiciously like a loss for your side, Mr. Cambria. So if it's... First, how do you win on issue preclusion if that's the case? And second, even if you win on issue preclusion on that or on Rooker-Feldman or on judicial immunity, how is that not at least enough of a hook for somebody like Judge Hillman to say, I think there was enough of a good faith basis here for this not to be Rule 11 sanctionable? Well, you know, I don't think that Judge Mendez wanted to be a micromanager, and I don't think that a receiver should be in a position of saying, should I take this action or not take this action because the judge might ultimately come to disapprove of it. Mr. Litwack was doing his best to manage these companies under very trying circumstances, in a difficult economic time, and while he was under constant attack from Ms. Howell's representative. And he made a call. The judge said, I don't know if I would want you to do that. Terminate the guy, and he did. What's your reference in the record to the judge saying it in a sort of a T, I'm not sure, as opposed to saying you're outside your authority? Look, Judge, I don't have a page citation now, but I can be happy to submit it to you. Okay. Thank you, Judge. Thank you. Commissioner Pelosi. Your Honor, this is Bill Pelosi for Grucho Pepper. Grucho Pepper was the receiver's attorney, so the issues as to him are somewhat simpler than the overall issues in the case. If you take a look at the complaint filed by the appellant, there are basically three arguments or challenges to Grucho Pepper's activities. One was serving at all as the receiver's attorney. They argue that he shouldn't have been allowed to act as the attorney, that he wasn't properly appointed. The other one was helping the receiver issue certain subpoenas, and the third was helping the receiver with certain of the receiver's early reports to the court. And in the course of the underlying state court action, all those things were challenged, and Hal lost his license. How many counts specifically of the 12 related to Grucho Pepper? No, I don't remember the count. Nine and 11 were specifically Grucho Pepper, but were there others where there was a combined? I think the attorney tied Grucho Pepper into all the accounts, the RICO accounts, et cetera, et cetera. I think Grucho Pepper was tied into a great many of the accounts. I didn't go back in preparing for this and look to see how many of them. But if you look at the underlying, if you look at the factual allegations, those are the three primary factual allegations against Grucho Pepper. And what the state court looked at that and said, no, no, we approve of hiring Grucho Pepper as the receiver's attorney. That was reasonable under the circumstances. We have Grucho Pepper's invoices. They weren't very large. They were a few thousand dollars. And, yeah, okay, subpoenas, helping with the report. Okay, that's reasonable. We agree that that's reasonable, and we agree that the company should pay for that, and Grucho Pepper's legal bills are going to be paid. And so those issues were tried. They were argued that they were decided in the superior court. Grucho Pepper did nothing wrong by acting as the receiver's attorney. It did nothing wrong by helping to issue subpoenas. It did nothing wrong by helping with the early reports. Yeah, we really, I mean, at this point we really haven't got to much of any of that. We've been talking almost exclusively with Mr. Kang about jurisdictional matters. Is there anything you want to address with regard to those? With regard to Rooker-Feldman? Either Rooker-Feldman or diversity jurisdiction. Well, with respect to Rooker-Feldman, I'd like to point out that the receiver was acting, in effect, as the court's agent. And this isn't just about the initial order where the court said, okay, Mr. Wackio, the receiver. This is about all the subsequent orders where the court, in effect, said, we like what you're doing. You are our agent. Keep doing what you're doing. One simple example with respect to removing Ms. Howe as an officer in the company. She challenged that, and the court came back and said, Ms. Howe, we appoint a receiver because you were dissipating assets in the estate. And this wasn't just a divorce. This was a stockholder oppression action combined with a divorce case. You were dissipating assets, and the receiver came in, and he kicked you out. We think that's a good thing to do. You are not to come back into the corporation. He's to keep you out. And at the end of the day, by the way, the receiver also greatly increased the value of this entity and protected the value of this entity, which I would submit trumps everything in this case because it's the ultimate issue of the damages they're looking for. It's been held there are no damages, so why are they here? This issue of preclusion is litigation 101, and all the facts were well, well, well, well known to Howe and to Howe's attorneys because they were the same attorneys when they filed the federal court action, which is why sanctions are warranted. If we should decide that the issue of issue preclusion would warrant judgment in favor of the defendants, are we in a position as a court of appeals to rule on that, or do we need to send it back to the… No, I think because it wasn't addressed by the lower court that you can actually consider that de novo, and I believe I said some authority to that in the brief. Perhaps you can answer two things, and I should ask maybe Mr. Cambria this, but hopefully you'll be able to respond to it. I'd like an answer to Mr. Kang's assertion that the record doesn't reflect that the state judge took back some comments about or vacated some rulings about Mr. Litwack stepping outside his bounds. I understood Mr. Kang's assertion said no, no, that was only as to one thing. Is that right, or was it… There were countless instances of Mr. Kang accusing the receiver of stepping outside of his authority. At the end of the day, I believe there was one thing in the record where the court didn't basically tell Hal that Hal was wrong. That was with respect to briefly appointing a marking person. The court said, no, that's outside your authority. Unappoint that person. He did. It's in it. I don't think it affects anything of a material nature in the case. That's because in the end the court made a finding that the value of this company was increased. That's your assertion. There's no harm, no foul. That's one of my assertions. Also, if you look at it in the context of, for example, judicial immunity, the receiver acting on behalf of the court and, therefore, sharing the court's immunity, that's not a glass crystal. One tiny crack, one tiny step outside of the approved authority of the court shatters judicial immunity. That's just what the court said. On this one tiny thing, we don't think that was something that we were authorizing. Undo it. Fine. I think it's no harm, no foul because they can't attach material damages to that. Let's say that was in their complaint and that still stood. It wasn't precluded by issue preclusion or anything. You appointed someone briefly who shouldn't have been in there, so you want to appoint them. Okay? So what? Now, if my colleagues will indulge me, one last question. We've asked both other counsel here in the case. Are you aware of a mechanism in New Jersey law for them, that is, how to have challenged the rulings of the state court judge about the propriety of Mr. Litwack's actions as receiver? I am aware of, because I think we briefed it in our papers, of case law to the effect that, gee, you should have challenged this when the order was issued approving of the receiver's final report. Now, the question came up of what about the fact that this was a consent order that terminated the divorce action? Right. Well, it occurs to me that if it was a consent order, they could have reserved their right to appeal and challenge specific things that occurred in the action that they wanted to preserve. Right. That occurs to me, too. What I'm asking you is, is that, as a matter of New Jersey law, something they can do? I would have to brief that. I would have to research it. At the end, in fact, I will ask all counsel if there was some 28J letters in response to Judge Jordan's question. I'll deal with that. If I may just add one point to that, though. Let's assume that the consent order meant you can't. Well, then that's a waiver. It's a consent order. They consented to it. If that waived their ability to appeal something. That seems odd. You're saying your options are consent and get the divorce or don't consent and don't get the divorce. But if you consent, you waive all your rights. That seems kind of strange to me. But you'll handle this with the 28J action. Particularly since this was not only a divorce action, but it was a stockholder action that had been joined in. So that in terminating the case, you're terminating more than just the divorce. You are resolving the other. But suffering stockholder, is that what you? Oppressed stockholder. Right. Mrs. Howe's husband had that action. And it would seem that if you settle any case and therefore settle without reserving. And if you were to settle any case, in effect, and as a result of settling the case, lose the ability to appeal something that happened during the case, that's your decision in settling the case. So the consent and the divorce settled the oppressed stockholder issue also? I'm not aware of the matter. I mean, they were consolidated. I'm not aware of anything happening after that. All right. Thank you very much. Mr. Kagan, I think you have five minutes. If you can address this, start off with the question I asked you before you sat down on diversity, and then I'll follow up with that on a question relating to Rooker Feldman. Your Honor, I would have to brief the court separately. I don't have the authority with me today. Okay. Dr. Rooker Feldman, then, for the moment, is how, in reality, complaining of the injury by the state court's appointing Litwack as the receiver or the actions he took after he was appointed? The latter, Your Honor. My client is now complaining about there was no injury occur as a result of the state court's order appointing the receiver. I mean, that's a tenuous and far-fetched argument. That's like maybe blaming the former Governor Whitman for appointing Judge Testa, who appointed Judge Testa at the end. When Judge Testa, the former judge who appointed Mr. Litwack as the receiver, Judge Testa had no clue what kind of actions that Mr. Litwack would take. Yeah, but Judge Testa learned what sort of actions Mr. Litwack took because you kept going and complaining to Judge Testa and saying, He's messing it up. He's outside his authority. He's doing things he shouldn't be allowed to do. Make him stop. Don't pay him. Throw him out. And you lost, and you lost, and you lost in those challenges with one single exception. You lost. So having, in fact, taken your case to the state court judge who appointed the receiver, what is it about the judge's rulings on those matters that are less than judgments that should enjoy sort of Rooker-Feldman immunity from your collateral attack in federal court? Your Honor, I don't think that the rulings that the state court judge made or some of the opinions the judge issued regarding some of the conducts that he did have any bearings on Rooker-Feldman, especially the Rooker-Feldman, because Rooker-Feldman doctrine, this Court specifically said in both the Robinson case and Great Western that any ratification or any unpunished conduct by the state court judgment has nothing to do with the jurisdictional question raised by the Rooker-Feldman doctrine. Only time that Rooker-Feldman doctrine will bar is when the judgment itself has caused the injury. And in this case, that's not it. And in Rooker, in ExxonMobil, the Supreme Court, in saying this is a limited rule, sort of specifically directs courts to consider issue preclusion, right? Yes, Your Honor. If the Rooker-Feldman doctrine does not apply, then you may go to the next step, which will be the preclusion principle. Can this Court consider preclusion on the basis, this has been briefed and argued, can we resolve the preclusion issue ourselves on this appeal? The answer is yes, Your Honor. As this Court said in Robinson's case, the issues that were not passed on by the lower court should be remanded back to the district court and let them take that issue on in the first instance. And there's a Supreme Court case that says that as well. What if the record, what if we were to agree with Mr. Pelosi that at the end of the day, the only unprecluded issue, the marketing executive appointment, is one that has no consequence because of the state court finding of increased value? If we accepted that, would that end the matter? No, Your Honor, because there has never been a final adjudication regarding the receivership. And the reason being is, what I had argued earlier, there was only one action. I know that the case was consolidated regarding a shareholder matter and the divorce matter. But under New Jersey law, since the sole shareholders of the corporation were both husband and wife, the corporation was treated as a marital property and not a separate entity. If the corporation had other shareholders, that might have been a different story. So this case was no different from any other family court action where the parties are seeking divorce and distribution issues. So when you say it's no different, it's different to the extent that the state court decided there had to be a receiver to step in and operate the business because Ms. Howe was operating it in a manner that was contrary to the interests of the other shareholder, her husband, and contrary to the interests of the business itself, right? I mean, that's not your typical divorce action, is it? Your Honor, I'm not sure what is typical. All I know what the record shows is that the receiver was appointed strictly for the purposes of to maintain the status quo of the business and protect the assets. He was not authorized to go outside his realm, as Judge Ordon put it, and did what he did. And the state court judge specifically found that the receiver exceeded the scope of his duties by interjecting himself in the middle of this litigation. And the state court judge issued an order telling him that he ought to be prohibited from participating in this litigation. For instance, for the receiver to send information to the state court, saying that Ms. Howe is having an illicit sexual relationship with an employee or that she has committed tax fraud, that kind of information has no relevance in connection with discharge of his duties as a receiver. Thank you very much. Thank you to all the counsel for being for us today. I would like to ask if you could prepare 28 J letters submitted a week from today, each of them to be five double-spaced pages, no more, on the following two questions. Five double-spaced pages in total. How, if at all, are the state court's rulings on the receiver's actions appealed? How, if at all, are the state court's rulings on the receiver's actions appealed? And secondly, if the district court dismissed the state law counts solely because of the lack of jurisdiction, diversity jurisdiction, so if the district court dismissed the state law counts solely because of the lack of diversity jurisdiction, in effect for improper or incomplete pleading, is that a non-final order which is not appealable? Can we add the question I had asked? Sure. Go right ahead. Can a divorce decree by consent be appealed, or can the underlying order on the receiver be appealed following a divorce decree by consent? I take that as a friendly amendment. That's what the first question was trying to get at. What we're trying to find out is, I mean, the assertion is being made to us, at least implicitly, there's nothing Ms. Howe could have done. How could she have appealed this? It would have been interlocutory earlier, and it was a consent decree, so she couldn't have appealed at that point. Your question was on the receiver's actions, wasn't it? Right. I'm curious to know, is there a way that you can get at the receiver's actions,  The first one, can a divorce decree by consent be appealed under New Jersey law? And the second one is, how, if at all, are the state court's rulings on the receiver's actions appealed? And then the third question is, if a district court, if the district court dismissed the state law count solely because of the lack of diversity jurisdiction, is that a non-final order, which is not appealable? So those three questions, and instead of five double-spaced pages, because we've added no more than seven double-spaced pages per submission, so there's possibly three submissions if you want. But probably on your side, you may only want to do one jointly. Thank you very much. We'll take the matter under advisement. Thank you. You're welcome.